UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X

PATRICK SANTOS,                                    Case No.    21-CV-5431

        Charging Party,                        **COMPLAINT**

-v-                                                **JURY TRIAL DEMANDED**

DIALYSIS CLINIC, INC.

        Respondent.
---------------------------------------------------------X

    Plaintiff Patrick Santos (hereinafter "Plaintiff" or "Santos"), by his attorneys, Menken Simpson & Rozger LLP, complains of Defendant Dialysis Clinic, Inc. ("Dialysis" or "Defendant") as follows:

## PRELIMINARY STATEMENT

    1.    This action is brought to remedy claims of discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), as amended by the ADA Amendments Act of 2008 ("ADAAA"), and the New York City Human Rights Law, N.Y.C. Admin Code § 8-101 *et seq.* (the "New York City Human Rights Law" or "NYCHRL").

    2.    Plaintiff seeks economic, compensatory, and punitive damages, attorneys' fees and all other appropriate relief pursuant to federal and city law.

## JURISDICTION & VENUE

    3.    On January 15, 2021, Santos filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission, complaining of the unlawful discriminatory acts alleged herein, and obtained from the agency a Notice of Right to Sue, dated July 29, 2021, less than 90 days prior to the filing of this Complaint.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

5. This Court also has supplemental jurisdiction over Plaintiff's city law claims pursuant to 28 U.S.C. § 1367.

6. As the Plaintiff was employed in the Eastern District of New York, and a substantial part of the events described herein took place in this District, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 42 U.S.C. § 2000e-5(f)(3).

7. Contemporaneously with instituting this lawsuit, Plaintiff submitted copies of the Complaint to the New York City Commission on Human Rights and Department of Law.

## PARTIES

8. At all times relevant to this action, Patrick Santos is an adult individual residing in Belleville, New Jersey.

9. Defendant Dialysis is a not-for-profit healthcare company organized under the laws of Tennessee that provides dialysis treatment to patients through a series of clinics in several states, including New York. Dialysis's principal place of business is in Nashville, Tennessee.

10. At all times relevant to this Complaint, Dialysis was Santos' employer within the meaning of the ADA, 42 U.S.C. § 12111(5)(A) and the NYCHRL.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment with Dialysis

11. Santos was employed by Dialysis since May of 2017 as an Area Technical Manager for the various Dialysis clinics in Staten Island and western Brooklyn.

12. Santos was a salaried, exempt employee whose job description included a detailed list of seventeen "essential duties and responsibilities," all but one of which were managerial or administrative, such as "assures that the overall operation of all technical aspects of dialysis...is in accordance with manufacturer's guidelines," "coordinates the preventative maintenance schedules," and "supervises and assures the fulfillment and timely documentation of preventative maintenance schedules and all repair work at assigned facilities."

13. The only item in his job description that involved the physical performance of maintenance or repair tasks reads "Plans, supervises and/or directly conducts cleaning, disinfection and/or sterilization methods and techniques of all equipment and systems."

14. On January 9, 2020, while working at Dialysis's clinic at the Richmond University Medical Center, Santos injured his right shoulder.

15. The injury worsened in the coming days, and on January 11th Santos emailed his manager, Wayne Dwyer, to tell him he was hurt.

16. On January 13th, Santos was in too much pain to come to work, and called Dwyer to inform him.

17. Dwyer's reaction was very hostile, and he threatened to fire Santos for not reporting his injury within 24 hours.

18. Dwyer also told Santos he would have to cancel his planned vacation because of his injury.

19. Alarmed by Dwyer's reaction, Santos called Shannon Jamison of the Human Resources department on January 16 and related that conversation to her.

20. Jamison reassured Santos that light duty or administrative tasks would be available for him, since he was in a management position.

21. Later that day, Santos visited his doctor and had X-rays taken, which revealed he had tendinitis of the shoulder and a possibly torn rotator cuff.

22. The next day, Santos reported this to Dwyer, and he asked if he could return to work but perform only light physical duties, per his doctor's advice.

23. Dwyer responded that Santos could only return to work when he was 100% able to work without restrictions.

24. After Santos returned from his planned vacation, extended because of Plaintiff fell sick with an unrelated illness while away, on February 24, 2020, he was in fact placed on light duty, which he attributed to Ms. Jamison's intervention with Dwyer.

25. In practice, light duty meant Santos could perform the vast majority of his prior duties without assistance, with the exception of preventative maintenance or repairs of dialysis machines or portable reverse-osmosis machines. With assistance Santos could perform all of his duties.

26. In retaliation for Santos' reasonable accommodation request, on March 2, 2020, Dwyer issued him an unfavorable performance review.

27. The review had been due in May of 2019, and the only reason it was finally issued was Dwyer's desire to retaliate against Santos.

28. Dwyer's issuance of this negative performance review a week after Santos' return to work was both retaliatory and an effort to build a false record of poor performance in order to support future retaliatory action.

29. After Santos had another doctor's appointment on March 11, 2020, to discuss his MRI results, which confirmed a torn rotator cuff, Santos informed Dwyer the next day that he

4

would need the light duty accommodation for an additional four weeks, and provided a doctor's note to that effect on March 16.

30. Dwyer never responded to the March 11th email. When Santos re-sent that email on March 26th, Dwyer responded with a list of all of Santos' prior work tasks, and ignored his request for an accommodation.

31. Despite Santos' documented need for an accommodation, on March 26, Dwyer told Santos that he expected him to perform all his work tasks by himself.

32. Santos did not object to performing any of these tasks, except for the monthly disinfection of a reverse osmosis machine and the annual servicing of a dialysis machine. Santos told Dwyer that he could not carry the 45lb. tool bag and use the physical force required to perform those tasks by himself without assistance.

33. Dwyer refused Santos' request for assistance with those two tasks, and rather than disobey Dwyer's directive, Santos was forced to take additional medical leave, which he expected to last two weeks.

34. Santos expected to return to work after April 10th with the approval of his doctor, on light duty.

35. Before Santos could return, however, Senior Operations Director Karen Hansen sent him a series of emails, setting conditions on his return. Hansen made it clear that he could not return to work unless he was able to perform heavy physical labor, including tasks that do not appear in his job description and that he did not do before his injury.

36. Hansen made it clear that Santos was expected to perform all of the physical work of the three technicians working under him, in five different facilities.

37. Although Santos could perform substantially all of the work he had performed before his injury, he required assistance with the most physical tasks.

38. Hansen made it clear to Santos that Dialysis was unwilling to accommodate him, despite the fact that he had been working satisfactorily at his job for a month on light duty. Hansen told him he should work through the pain.

39. On April 9, 2021, Hansen told Santos that she and Dwyer had planned to put him on a performance improvement plan because of his "poor performance review" the month before.

40. Despite Hansen's characterization of Santos' performance review as "poor," Dialysis denied during proceedings before the Equal Employment Opportunity Commission in this matter that Santos' review was unfavorable.

41. On May 15, 2020, Santos requested to be able to return to work with a restriction of lifting no more than 10 pounds, on the advice of his orthopedist.

42. Dialysis refused to allow Santos this accommodation, and he was never permitted to return to work.

43. While Santos was out on leave, Dialysis changed his job description to include more manual tasks, and removed the word "manager" from his title.

44. The job description was not changed for the Area Technical Manager in any other Dialysis location.

45. On May 27th, 2020, Dialysis informed Santos that the Company had decided to eliminate his position due to a Company "reorganization."

### FIRST CAUSE OF ACTION: VIOLATION OF THE ADA

45. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

6

46. Plaintiff suffered from a disability that is covered by the ADA.

47. Defendant knew or should have known of Plaintiff's disability prior to his termination.

48. Defendant discriminated against Plaintiff on the basis of his disability, in violation of the ADA, by failing to offer Plaintiff a reasonable accommodation for his disability, resulting in his discharge.

49. Plaintiff has lost wages, promotional opportunities and other benefits and compensation, and has suffered and continues to suffer severe mental anguish, emotional distress, humiliation and other compensable injuries as a result of Defendant's unlawful conduct.

### SECOND CAUSE OF ACTION: VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW

50. Plaintiff repeats and realleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

51. In violation of the NYCHRL, Defendant discriminated against Plaintiff on the basis of his disability when it constructively discharged him.

52. In violation of the NYCHRL, Defendant discriminated against Plaintiff when it failed to offer him reasonable accommodations for his disabilities which would allow him to satisfy the essential requisites of his job, resulting in his constructive discharge.

53. In taking the above-described discriminatory actions, Defendant acted with malice and reckless indifference to Plaintiff's rights under the NYCHRL.

54. Plaintiff has lost wages, promotional opportunities and other benefits and compensation, and has suffered and continues to suffer severe mental anguish, emotional distress, humiliation and other compensable injuries as a result of Defendant's discriminatory practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

a. Declaring the acts and practices complaint of herein to be violations of the ADA and the New York City Human Rights Law;

b. Enjoining and permanently restraining these violations of law; and reinstating Plaintiff to his position of employment;

c. Directing defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated;

d. Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's unlawful conduct, and making him whole for all earnings and other benefits he would have received but for Defendant's unlawful conduct, including but not limited to wages, commissions, other lost benefits, loss of good will, and interest thereon;

e. Directing Defendant to pay plaintiff compensatory damages, including damages for his mental anguish, denial of life's pleasures, pain and suffering and humiliation, as well as punitive damages;

f. Awarding Plaintiff the costs of this action together with reasonable attorney fees;

g. Directing Defendant to pay statutory and punitive damages; and,

h. Granting such other relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands that this proceeding be tried to a jury.

Dated: September 30, 2021

New York, New York

        BERANBAUM MENKEN LLP

        */s/ Jason Rozger*
        Jason Rozger
        Brenna Rabinowitz
        80 Pine Street, 33rd Floor
        New York, New York 10005
        (212) 509-1616